WESNOVTEK CORPORATION, APPELLEE, *v.* WILKINS, TAX COMMR., APPELLANT.

[Cite as *Wesnovtek Corp. v. Wilkins,* 105
Ohio St.3d 312, 2005-Ohio-1826.]

(No. 2003–0822—Submitted January 18, 2005—Decided May 4, 2005.)

**MOYER, C.J.**

{¶ 1} This case involves the calculation of the Ohio corporation-franchise-tax liability of Wesnovtek Corporation ("Wesnovtek"), appellee, for the 1988 tax year. The first question we address is whether, based on former R.C. 5733.051, a loss from the bulk sale of inventory must be allocated or apportioned. We then consider whether the Tax Commissioner is required to consider a deviation from the statutory apportionment formula when a corporate taxpayer fails to submit a request for deviation in writing at the time the franchise tax report is filed.

## Overview of the Ohio Corporation Franchise Tax

{¶ 2} The Ohio franchise tax is an excise tax levied upon corporations for the privilege of doing business in the state, owning or using a part or all of its capital or property in this state, or holding a certificate of compliance authorizing it to do business in this state. R.C. 5733.01. The franchise tax was and still is calculated on both a net-worth and a net-income basis. R.C. 5733.05(B) and (C); see former R.C. 5733.05(A) and (B), Sub.H.B. No. 428, 141 Ohio Laws, Part II, 3672, 4166–4171. The calculation that produces the greater amount of tax is used as the basis to levy the tax. R.C. 5733.06. The issues presented in this appeal involve the calculation of the net-income basis.

{¶ 3} In order to fairly tax corporations that do business in more than one state, the statutory framework measures the extent of a corporation's Ohio business activity. *R.H. Macy & Co., Inc. v. Lindley* (1986), 25 Ohio St.3d 218, 219, 25 OBR 279, 495 N.E.2d 948. To determine the amount of net income to

attribute to Ohio, certain types of income are allocated, and other income is apportioned.

{¶ 4} Although neither "allocation" nor "apportionment" is statutorily defined, this court defined the terms in *Harsco Corp. v. Tracy* (1999), 85 Ohio St.3d 382, 708 N.E.2d 1000. We stated that allocation "determines income based upon the situs of property that is the source of that income." Id. at 383, 708 N.E.2d 1000. That is, allocation refers to the attribution to a particular jurisdiction of income from a given source, usually because the asset that is the source of that income is located in that jurisdiction. Apportionment "divides income from interstate activity that is not allocated to a definite situs by using a formula based upon several factors." Id. Thus, when the source of the income cannot be attributed to a particular asset or activity in a particular jurisdiction so as to be allocated, it is apportioned according to an apportionment formula. R.C. 5733.05(B)(2).

### Factual and Procedural Background

{¶ 5} Wesnovtek is successor by name change to Dura Corporation ("Dura"). Dura sold all of its assets except real estate in 1987. Included in the sale was inventory from Dura's two automotive-equipment plants located in Ohio and Michigan. In calculating its net-income basis, Wesnovtek allocated to Ohio the net loss realized from its sale of inventory located in Ohio. Consequently, Wesnovtek did not account for its inventory using the statutory method. Under former R.C. 5733.05(B)(2), 141 Ohio Laws, Part II, 3672, 4168–4169, a corporation adds a property factor, a payroll factor, and a sales factor that is multiplied by two, and then divides the total by four. When Wesnovtek calculated its apportionment factor, it did not include a factor for sales, ignoring the income from the sale of the inventory. Therefore, when Wesnovtek calculated its apportionment factor, it used only the property and payroll factors and divided by two.

{¶ 6} Although former R.C. 5733.05(B)(2)(d) permits a corporation to seek deviation from the standard formula in certain circumstances by submitting a request in writing at the time the tax report is filed, Wesnovtek did not file such a request.

{¶ 7} After an audit, the Tax Commissioner denied Wesnovtek's allocation of the loss from the sale of inventory in Ohio and determined that the sale of the inventory was subject to apportionment pursuant to former R.C. 5733.05(B)(2)(c), 141 Ohio Laws, Part II, 3672, 4170. The Tax Commissioner also included the income from the sale of the inventory in the sales factor used to calculate the statutory apportionment factor.

{¶ 8} Wesnovtek filed a petition for reassessment with the Tax Commissioner, who determined that the loss from the bulk sale of inventory should be apportioned. The Tax Commissioner did not consider Wesnovtek's request to deviate

from the statutory apportionment formula because Wesnovtek had not filed a timely written request to use a two-factor apportionment formula as required by former R.C. 5733.05(B)(2)(d).

{¶ 9} The Board of Tax Appeals ("BTA") reversed the decision of the Tax Commissioner. The BTA held that the loss from the sale of inventory sitused in Ohio was allocable to Ohio because the sale was not in the ordinary course of business and fell within the rule of *Borden, Inc. v. Limbach* (1990), 49 Ohio St.3d 240, 551 N.E.2d 1268. The BTA also held that the Tax Commissioner should have granted Wesnovtek the right to deviate from the statutory apportionment formula.

{¶ 10} The Tax Commissioner presents two propositions of law for our review. In the first proposition, the commissioner argues that a net loss from the bulk sale of inventory must be apportioned. In the second proposition, the commissioner contends that a request for a deviation from the statutory apportionment formula may not be considered or granted by the Tax Commissioner when a corporate taxpayer has failed to make a written request for deviation at the time it files its franchise-tax report.

## Treatment of Net Income from the Bulk Sale of Inventory

{¶ 11} When determining whether to allocate or apportion income for the 1988 tax year, the relevant statute is former R.C. 5733.051. S.B. No. 33, 142 Ohio Laws, Part I, 86, 87. Former R.C. 5733.051(A) to (G) provides that gains and losses from particular sources are to be allocated. Because this case involves the sale of tangible personal property, our focus is on divisions (D) and (H). These provisions instruct as follows:

{¶ 12} "Net income of a corporation subject to the tax imposed by this chapter shall be allocated and apportioned to this state as follows:

{¶ 13} "* * *

{¶ 14} "(D) Capital gains and losses from the sale or other disposition of tangible personal property are allocable to this state if the property had a situs in this state at the time of sale and the taxpayer is otherwise subject to the tax imposed by this chapter;

{¶ 15} "* * *

{¶ 16} "(H) Any other net income, from sources other than those enumerated in divisions (A) to (G) of this section, is apportionable to this state on the basis of the mechanism provided in division (B)(2) of section 5733.05 of the Revised Code." S.B. No. 33, 142 Ohio Laws, Part I, 86–87.

{¶ 17} Thus, to allocate a gain or loss from the sale of tangible personal property to Ohio under division (D), there must be a capital gain or loss, and the

tangible personal property giving rise to the capital gain or loss must have been sitused in Ohio at the time of the sale.

{¶ 18} The nature of the asset sold determines whether a gain or loss is a capital gain or loss. Specifically, only the sale of a capital asset can give rise to a capital gain or loss. Otherwise, a gain or loss from the sale of all tangible personal property located in this state would be allocated, and "capital" in former R.C. 5377.051(D) would be rendered meaningless. Therefore, we must determine whether the relevant asset in the instant case (i.e., inventory) was a capital asset.

{¶ 19} The General Assembly has not defined "capital asset." We are guided, however, by R.C. 5733.04(J), which provides:

{¶ 20} "Any term used in this chapter has the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes unless a different meaning is clearly required."

{¶ 21} For federal tax purposes, inventory is not a capital asset. Section 1221(a)(1), Title 26, U.S.Code, provides:

{¶ 22} "[T]he term 'capital asset' means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

{¶ 23} "(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers on the ordinary course of his trade or business."

{¶ 24} Wesnovtek has not convinced us that a definition of capital asset different from the definition in Section 1221, Title 26, U.S.Code, is required. Although the BTA based its decision on the fact that the sale was part of the sale of nearly all of Wesnovtek's assets, nothing in the Internal Revenue Code, the Ohio Revised Code, or case law distinguishes between inventory sold in the normal course of business and inventory sold as part of a sale of other assets. Our decision in *Borden, Inc. v. Limbach,* 49 Ohio St.3d 240, 551 N.E.2d 1268, did not state that a sale of inventory outside the ordinary course of business is a sale of capital assets. Moreover, Wesnovtek's accountant conceded to the BTA that Wesnovtek's inventory was not a capital asset and that the gain or loss from the sale of the inventory would not be a capital gain or loss. Based on the foregoing, it is clear that inventory is not a capital asset. Accordingly, we hold that, pursuant to former R.C. 5733.051, a gain or loss from the sale of inventory must be apportioned rather than allocated. 142 Ohio Laws, Part I, 86–87.

### Deviation from the Statutory Apportionment Formula

{¶ 25} The BTA also concluded that Wesnovtek's deviation from the standard apportionment formula was proper. The Tax Commissioner contends that he

properly declined to consider Wesnovtek's request to deviate from the statutory formula.

{¶ 26} In *Cooper Tire & Rubber Co. v. Limbach* (1994), 70 Ohio St.3d 347, 349–350, 639 N.E.2d 27, we held that a request for an alternative apportionment formula must be considered only when the taxpayer has made a request in writing and has submitted the request with its report. That holding was based on former R.C. 5733.05(B)(2)(d), Sub.H.B. No. 428, 141 Ohio Laws, Part II, 3672, 4171, which provides:

{¶ 27} "If the allocation and apportionment provisions of division (B) of this section do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may request, *which request must be in writing and must accompany the report,* or the tax commissioner may require, in respect to all or any part of the taxpayer's allocated or apportioned base, if reasonable, any one or more of the following:

{¶ 28} "(i) Separate accounting;

{¶ 29} "(ii) The exclusion of any one or more of the factors;

{¶ 30} "(iii) The inclusion of one or more additional factors which will fairly represent the taxpayer's allocated or apportioned base in this state.

{¶ 31} "An alternative method will be effective only with approval by the tax commissioner." (Emphasis added.)

{¶ 32} We are not persuaded that we should change our application of the clear words of former R.C. 5733.05(B)(2)(d) and our holding in *Cooper Tire & Rubber Co.,* 70 Ohio St.3d 347, 639 N.E.2d 27. The BTA stated that strict compliance with former R.C. 5733.05(B)(2)(d) would create a "harsh result in this instance, since the taxpayer's omission of the four-factor formula is obvious from inspection of the return." Former R.C. 5733.05(B)(2)(d), however, grants no option that permits the BTA to ignore its terms because the result would be harsh. If we applied the unambiguous words of a statute by that standard, we would replace the will of the legislature with our own. The General Assembly placed the burden on the taxpayer to request in writing when the taxpayer seeks to deviate from the statutory formula in calculating the apportionment factor. Because Wesnovtek did not file a written request to deviate from the statutory apportionment formula at the time it filed its report, the Tax Commissioner properly declined to consider the deviation. Accordingly, we follow our holding in *Cooper Tire & Rubber Co. v. Limbach,* 70 Ohio St.3d 347, 639 N.E.2d 27, that the Tax Commissioner is not required to consider a deviation from the statutory formula for calculating the apportionment factor unless, pursuant to former R.C. 5733.05(B)(2)(d), a request to deviate is submitted in writing when the franchise tax report is filed.

{¶ 33} For the foregoing reasons, we reverse the decision of the Board of Tax Appeals.

Decision reversed.

RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

_____

Leonard A. Carlson, for appellee.

Jim Petro, Attorney General, and Richard C. Farrin, Senior Deputy Attorney General, for appellant.